Connie Jo BRIGGS, Michael Brown, Jr., Michael John Carnes, and Robert Patton, Plaintiffs,

v.

William MARSHALL, Howard Rutherford, and Town of French Lick, Defendants.

No. NA 90–63 C.

United States District Court, S.D. Indiana, New Albany Division.

Feb. 23, 1995.

Michael K. Sutherlin, Indianapolis, IN, John H. Shean, Bloomington, IN, for plaintiffs.

Van T. Willis, New Albany, IN, Arthur Dillard, Paoli, IN, Jay D. Allen, Allen Allen & Allen, Salem, IN, for defendants.

ENTRY

BARKER, Chief Judge.

This matter is before the Court on the following post-trial motions: Plaintiffs' motion for a new trial; Plaintiffs' motion to determine their status as a prevailing party; and Plaintiff's petition for attorneys' fees.

## I. FACTUAL BACKGROUND

Plaintiffs filed this suit under 42 U.S.C. § 1983 against *inter alia* the Town of French Lick ("the Town") and two French Lick police officers on May 15, 1990. The six-count complaint centered on two incidents that occurred in French Lick on May 17, 1988. The first incident happened after the French Lick Police Department (the Department) was informed that vandals had broken into a change machine at the French Lick Springs Hotel. Acting on a description provided by hotel security guards, officer William Marshall allegedly stopped plaintiffs Michael Brown, John Carnes and Robert Patton without probable cause and used excessive force to attempt a false arrest. Plaintiffs also claimed that Officer Howard Rutherford was present, but failed to intervene and stop the alleged use of excessive force. The second incident occurred later that same day when, according to Plaintiffs, Officer Marshall falsely arrested plaintiff Connie Jo Briggs, the mother of John Carnes, and used greater force than was necessary to arrest her.

On October 11, 1994, the Court commenced a jury trial, which concluded on October 14. At the conclusion of the evidence, the Defendants moved for a judgment as a matter of law on behalf of the Town and Defendant Rutherford. We granted the motion as to the Town and the case went to the jury on the theories of false arrest, excessive force and failure to intervene. After deliberating for several hours, the jury rendered a verdict

in favor of Officers Rutherford and Marshall with respect to the false arrest and failure to intervene claims. However, the jury found that Officer Marshall had used unreasonable force on all four plaintiffs and awarded nominal damages of $1.00 to each.

On October 24, 1994, Plaintiffs filed the instant motions, seeking a new trial pursuant to Federal Rule of Civil Procedure 59 and attorneys' fees pursuant to 42 U.S.C. § 1988. We consider each motion in turn.

## II. MOTION FOR A NEW TRIAL

Plaintiffs seek relief from the jury's October 14, 1994, verdict under Rule 59(a). Specifically, they object to the jury verdict awarding $1.00 in nominal damages as inconsistent with the finding that Marshall used excessive force. According to Plaintiffs, the jury impermissibly disregarded the uncontested evidence of actual damages resulting from Marshall's violation of their rights, thus requiring a new trial on the damages issue. We disagree.

■■■ Whether to grant a new trial is within the discretion of the district court. *Olsen v. Ohmeda,* 863 F.Supp. 870, 878 (E.D.Wis.1994). We will grant a new trial if the jury's verdict is against the clear weight of the evidence. *Thomas v. United States,* 41 F.3d 1109, 1120 (7th Cir.1994); *Jackson v. Bunge Corp.,* 40 F.3d 239, 244 (7th Cir.1994). We will not set aside the jury's verdict, however, if there is a reasonable basis in the record which supports it. *Thomas,* 41 F.3d at 1120.

■■ Our review of the caselaw reveals at least three situations where courts may award nominal damages consistent with a finding of an underlying constitutional violation. The first occurs in cases where a jury reasonably concludes that the plaintiffs' evidence concerning their injuries was not cred-

ible. For example, in *Butler v. Dowd,* 979 F.2d 661 (8th Cir.1992) (En Banc), the court considered whether the award of nominal damages to several plaintiffs who had been homosexually raped by other inmates in violation of the Eighth Amendment was inadequate as a matter of law. In affirming the award, the court noted that "plaintiffs failed to produce at trial objective medical evidence supporting their physical injuries or detailing the extent of their emotional injuries." *Id.* at 669.[1] As a result, the "jury could have disbelieved the plaintiffs' testimony regarding the extent of their injuries" and lawfully awarded nominal damages. *Id.* at 672.

Second, courts have approved nominal damages in cases where plaintiffs have suffered apparently quantifiable harm, but the cause in fact of the harm was not the defendant's *unconstitutional* conduct. For example, in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that public school students who were suspended without procedural due process were entitled to recover only nominal damages if they would have been suspended even had they received the requisite constitutional hearing. *Accord Carter v. Burch,* 34 F.3d 257, 264 (4th Cir.1994); *Butler,* 979 F.2d at 669–71 (if jury "could have concluded that many of the plaintiffs' injuries would have occurred even if the defendant's conduct had met constitutional standards," then award of nominal damages is justified); *Smith v. City of Chicago,* 913 F.2d 469, 472–74 (7th Cir.1990) ("In order to recover more than nominal damages, [Plaintiff] must demonstrate that" he would not have been injured in the absence of the unconstitutional conduct).

Third and finally, juries may lawfully award nominal damages when they are unable to place a monetary value on the harm that the plaintiffs suffered. In other words,

---

1. The Court described the Plaintiffs' evidence concerning physical and emotional damages in that case as follows:

> We first note that an extensive review of the record demonstrates that none of the plaintiffs provided medical testimony regarding the extent of their physical injuries. Similarly, medical proof of the plaintiffs' emotional distress was limited to the introduction of one-page

medical services statements in which a prison psychologist (not a medical doctor) state merely that two of the plaintiffs ... suffered from "post traumatic stress disorder," and that he had prescribed sleeping pills for them. This psychologist did not testify. Plaintiffs provided no testimony explaining what "post traumatic stress disorder" is or what its effects are.
*Butler,* 979 F.2d at 671.

a jury may award nominal damages if it finds that the plaintiff's "injuries have no monetary value or are insufficient to justify with reasonable certainty a more substantial measure of damages." *Howard v. Barnett*, 21 F.3d 868, 873 (8th Cir.1994); *see also Domegan v. Ponte*, 972 F.2d 401, 407 n. 10 (1st Cir.1992); *Cowans v. Wyrick*, 862 F.2d 697, 700 (8th Cir.1988); *cf. Carey* 435 U.S. at 266–67, 98 S.Ct. at 1054 (due process violation entitled to nominal damages where no proof of actual injury); *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 309–310, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249 (1986) (there is "no room for noncompensatory damages measured by the jury's perception of the abstract 'importance' of a constitutional right").

■ In this case, the record supports the jury's nominal damages award under any of these three theories. First, the jury could have reasonably concluded that the plaintiffs' evidence concerning their injuries was not credible. Indeed, nearly all the evidence regarding damages consisted of the Plaintiffs' own testimony. None of the Plaintiffs provided medical testimony regarding the extent of their physical injuries.[2] Objective medical proof of the plaintiffs' pain and suffering was similarly lacking. As a result, the issue of damages depended upon the credibility of the Plaintiffs, and there is evidence in the record from which the jury could have disbelieved the extent of their physical and emotional injuries.[3]

The jury also could have concluded that many of the scratches and bruises suffered by the Plaintiffs would have occurred even if Officer Marshall's conduct had met constitutional standards. For example, at the time of the first incident plaintiffs Brown, Carnes and Patton each had prior criminal records, as well as reputations for resisting arrest and attempting to flee from police officers. There was also testimony that Carnes made a movement that Officer Marshall interpreted as an attempt to flee. In light of these surrounding circumstances, the jury could have concluded that much of the force Officer Marshall brought to bear was constitutionally permissible. In other words, the jury could "have found the defendant's *unconstitutional* actions were not the cause in fact of many of the plaintiffs' injuries and still have returned a verdict for plaintiffs." *Butler*, 979 F.2d at 670 (emphasis added).

Finally, the jury could have permissibly awarded nominal damages simply because they were unable to place a monetary value on the harm that the Plaintiffs suffered. The evidence suggests, for example, that Officer Marshall employed low-level force—such as slapping, shoving and pulling hair—that caused mostly minor physical injuries. Indeed, the Court accepted into evidence photographs of the injuries suffered by Carnes and Brown that revealed only a few faint bruises with little surrounding redness. *See* Plaintiff's Ex. Nos. 11, 13–15. In light of the meager evidence presented on damages, the jury could have rationally concluded that those injuries were simply "insufficient to justify with reasonable certainty a more sub-

---

2. Ms. Briggs did submit a chiropractic bill which, she claims, is uncontroverted evidence of her physical injuries. We note, however, that the chiropractor did not testify. As a result, the only evidence tending to establish a causal link between Officer Marshall's unconstitutional conduct and Ms. Briggs' back problems was Ms. Briggs' own assertions, which the jury was free to discount. Moreover, even if the jury believed that Officer Marshall caused Ms. Briggs' back problems, the jury could have found that this injury was caused by a constitutionally permissible use of force. *See* note 4, *infra*.

3. For example, there was testimony that a half-hour after the first incident, Carnes, Brown and Patton walked by the Police Department laughing, without limping or any visible signs of physi-

cal difficulty. Indeed, despite the alleged seriousness of their injuries, they completed their morning errands on foot. Moreover, none of the Plaintiffs sought immediate medical attention. Patton, for example, did not go to a hospital, opting instead to mow a neighbor's yard. Although Briggs and Carnes did visit a hospital later that day, they only did so after Denise Smallwood, an Orange County prosecuting secretary, recommended it in order to facilitate their complaint against Marshall. Brown also visited a doctor, complaining that he could not move his arm. According to his testimony, however, that injury was similar to a pre-existing condition unrelated to his arrest and the only treatment he received was a prescription for medicine to calm his nerves.

stantial measure of damages." *Howard,* 21 F.3d at 873.[4]

According to Plaintiffs, a new trial on damages is required by *Stachniak v. Hayes,* 989 F.2d 914, 923–24 (7th Cir.1993). In that case, the Seventh Circuit found that a district court "correctly refused to give a nominal damages jury instruction" in a § 1983 action alleging excessive force. Unlike the situation here, however, the plaintiff in that case presented testimony from the treating physician to establish that his injuries were both genuine and severe. Indeed, in marked contrast to the evidence presented in our case, the court in *Stachniak* was "unable to discover *any* evidence presented at trial in support of the defendants' argument that [plaintiff] suffered no provable injury during the struggle with the officers." *Id.* at 923 (emphasis added).

In sum, a rational jury could have found that the Plaintiffs failed to prove any actual damages were caused by Officer Marshall's unconstitutional conduct. We therefore deny Plaintiffs' motion for a new trial on the damages issue.

## III. ATTORNEYS' FEES

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, permits a court in its discretion to award the prevailing party in a § 1983 action reasonable attorneys' fees.[5] In *Farrar v. Hobby,* ⎯ U.S. ⎯, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court held that a plaintiff who wins nominal damages is a "prevailing party" for purposes of § 1988. As stated by Justice O'Connor: "Nominal relief does not necessarily a nominal victory make." *Farrar,* ⎯ U.S. at ⎯, 113 S.Ct. at 578 (O'Connor, J., concurring).

Although the award of nominal damages does not affect the prevailing party inquiry, "it does bear on the propriety of fees awarded under § 1988." *Farrar,* ⎯ U.S. at ⎯, 113 S.Ct. at 574. Indeed, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar,* ⎯ U.S. at ⎯, 113 S.Ct. at 574 (internal quotation marks omitted). According to the Court:

> In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A Plaintiff who seeks compensatory damages but receives no more than nominal damages is *often* such a prevailing party.

*Farrar,* ⎯ U.S. at ⎯, 113 S.Ct. at 575 (emphasis added).

This is not to say, however, that a jury's award of nominal damages should always result in a denial of attorneys' fees: neither *Farrar* "nor Justice O'Connor's concurring opinion ... evince a talismanic approach, either in tone or substance, to the question presented here." *Maul v. Constan,* 23 F.3d 143, 148 (7th Cir.1994) (Flaum, J., dissenting). Rather, the inquiry should focus on the nature and degree of a plaintiff's victory; if that "success is purely technical or *de minimis,* no fees can be awarded." *Farrar,* ⎯ U.S. at ⎯, 113 S.Ct. at 576 (O'Connor, J., concurring).

In order to determine whether a plaintiff's victory in obtaining nominal damages is *de minimis,* the Seventh Circuit has isolated three factors to consider: (1) the difference between the recovery sought and the judgment recovered; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose served by the litigation. *Cartwright v. Stamper,* 7 F.3d 106, 109 (7th Cir.1993). The first factor is

---

4. Indeed, Jury Instruction # 28 prohibited the jury from awarding speculative damages. Plaintiff Briggs, however, submitted a chiropractic bill which, she claims, is uncontroverted evidence of quantifiable damages. *See* Plaintiff's Ex. 40. As we discussed above, however, there is evidence in the record to support a finding that Officer Marshall's unconstitutional conduct did not cause her back injury; rather, that injury could have been caused by a constitutionally permissible use of force.

5. Section 1988 reads in pertinent part:

> In any action or proceeding to enforce a provision of section[] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. 42 U.S.C. 1988 (1992).

the most important, *Maul,* 23 F.3d at 145, and in this case weighs heavily against the Plaintiffs. Undeniably, Plaintiffs' primary goal in this litigation was to obtain monetary damages. The prayer for relief section of their complaint, for example, pertains almost entirely to monetary damages.[6] Moreover, Plaintiffs requested damages in the amount of $50,000 to Connie Jo Briggs, $5,000 to Robert Patton and $10,000 each to Michael Brown and John Carnes during closing arguments to the jury. *See* Transcript of Excerpt of Proceedings, pp. 18–19; *see also* Plaintiffs' Motion for New Trial, at 2–3. Plaintiffs also sought significant punitive damages. Thus, because Plaintiffs "sought substantial compensatory and punitive damages and recovered only nominal damages," the first factor "clearly weighs in favor of classifying the victory *de minimis.*" *Cartwright,* 7 F.3d at 109–110; *see also Cramblit v. Fikse,* 33 F.3d 633, 635 (6th Cir.1994) (because the prayer for relief section of the complaint pertained primarily to monetary damages, jury award of nominal damages did not entitle plaintiff to attorneys fees).

The second factor considers the significance of the legal issue on which the plaintiffs prevailed. This factor examines the extent to which plaintiffs succeeded on their theory of liability. *Maul,* 23 F.3d at 145; *Cartwright,* 7 F.3d at 110. In our case, Plaintiffs failed on all their federal and state claims against the County of Orange, Town of French Lick and Officers Feiock and Rutherford. Plaintiffs also failed to establish that Officer Marshall made an arrest without probable cause. Nevertheless, Plaintiffs did establish that Officer Marshall violated their Fourth Amendment right to be free from the use of excessive force. "This factor, therefore, suggests, albeit modestly, that the victory was more than *de minimis.*" *Cartwright,* 7 F.3d at 110. Factor two, however, is the

least weighty of the three "and therefore only minimally advances plaintiff[s'] claim that [they are] entitled to attorney's fees." *Maul,* 23 F.3d at 146.

Finally, the third factor considers the public purpose served by the victory. In other words, this factor examines whether "the decision creates benefits for other persons in the plaintiff's situation, for example by establishing a significant precedent that is likely to alter the behavior of potential defendants." *Bristow v. Drake Street Inc.,* 41 F.3d 345, 352 (7th Cir.1994); *see also Koopman v. Water Dist. No. 1,* 41 F.3d 1417 (7th Cir.1994).

In this case we have little difficulty concluding that the Plaintiffs' victory served little or no public purpose. It is clear from the relief sought by the Plaintiffs "that this suit's primary purpose was to remedy plaintiff[s'] own injuries and not to establish the rights" of citizens vis a vis the French Lick Police Department. *Maul,* 23 F.3d at 146. Indeed, Plaintiffs brought this suit on behalf of and alleged violations to their own rights. They did not request injunctive relief. Nor did they represent a class. They were also unsuccessful in obtaining punitive damages. *See Cartwright,* 7 F.3d at 110 ("An award of punitive damages, therefore, is strong evidence that the victory served a public purpose") *citing Estate of Borst v. O'Brien,* 979 F.2d 511, 517 (7th Cir.1992). While we concede that Plaintiffs sought to vindicate a public purpose by alleging that the Town failed to adequately train and supervise its police officers, we note that their municipal liability claim failed to survive the Defendants' Motion for a Judgment as a Matter of Law. Thus, the balance of these three factors weighs heavily in favor of classifying Plaintiffs' victory as *de minimis.* Accordingly, an award of attorneys' fees would be

---

**6.** That section of the Complaint reads as follows:
   WHEREFORE, Plaintiffs pray for Judgment against the defendants, and each of them jointly and severally, for damages as follows:
   1. For General Damages to each plaintiff as proximately caused by the conduct of the defendants in an amount commensurate with the evidence;
   2. For Special Damages incurred by each plaintiff as proximately caused by the conduct

of defendants in an amount commensurate with the evidence including medical expenses and lost wages;
   3. For Punitive Damages against defendants in an amount sufficient to punish defendants and to make an example of their conduct;
   4. For reasonable attorney's fees....

\*　\*　\*　\*　\*　\*

inappropriate and we deny the petition for fees.

## IV. CONCLUSION

For the reasons stated above, we DENY Plaintiffs' motion for a new trial. Although we GRANT Plaintiffs' motion to determine their status as a prevailing party, we DENY their corresponding petition for attorneys' fees.

It is so ORDERED.