United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-1645EM

| | | |
|---|---|---|
| Steven W. Parkus, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Paul K. Delo; Donald Roper; Glen W. | * | District of Missouri. |
| Stockwell; Billy R. Davis; David | * | |
| McPeak; Jeffrey Conway; Denver King; | * | |
| Marion Montgomery; Tim Counts, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 19, 1997
Filed: February 6, 1998

_____

Before FAGG and HANSEN, Circuit Judges, and PIERSOL,[*] District Judge.

_____

FAGG, Circuit Judge.

Steven W. Parkus, a Missouri prison inmate, brought this 42 U.S.C. § 1983 action against several correctional officers contending he was beaten in retaliation after he attacked, choked, sexually assaulted, and injured prison psychologist Betty Webber during a consultation in her office. In addition to Parkus's Eighth Amendment claims,

_____

[*]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

Parkus asserted procedural due process claims against the correctional officers. The district court granted judgment as a matter of law on the procedural due process claims, and the jury returned verdicts against Parkus on his Eighth Amendment claims.

Initially, Parkus contends the district court misinstructed the jury. In instructing the jury on the elements Parkus must prove to prevail on his excessive force claims, the district court essentially told the jurors they must decide whether the challenged force was applied in a legitimate effort to subdue Parkus or was applied maliciously and sadistically to cause harm in violation of the Eighth Amendment. Parkus did not object to the verdict-directing instructions. To assist the jury in deciding whether the correctional officers acted with a sufficiently culpable state of mind, the district court defined the words "maliciously" and "sadistically" in another instruction. Although the district court's definitions track the ordinary meaning of the words that we used in deciding Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994), Parkus objected to the definition of sadistic behavior.

Despite putting the correctional officers' subjective motivations in issue under the malicious and sadistic factors, see Graham v. Conner, 490 U.S. 386, 397 (1989), Parkus contends the district court overstated the state of mind the jury must find for a constitutional violation by defining sadistic behavior in terms of "extreme or excessive cruelty or delighting in cruelty" as opposed to "regular cruelty." It is Parkus, however, who misstates the controlling standard. The Supreme Court's decisions make clear the Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment, and this protection is grounded on their right to be free from the unnecessary and wanton infliction of pain at the hands of correctional officers. See Hudson v. McMillian, 503 U.S. 1, 5 (1992). The unnecessary and wanton standard does not have a fixed meaning, however, and the state of mind necessary to establish cruel and unusual punishment depends on the nature of the claimed constitutional violation. See id. Thus, when correctional officers are accused of using excessive physical force, they act with a wanton state of mind when the force is applied maliciously and

sadistically to cause harm.  See id. at 6-7; Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  In our view, Hudson and Whitley make clear that  this "very high state of mind" controls Parkus's case.  Wilson v. Seiter, 501 U.S. 294, 302-03 (1991).

Although district courts are not required to define words that are in the vocabularies of lay persons,  the meaning of "maliciously" and "sadistically" is critical to a jury's deliberations in this type of case.  We cannot say the district court abused its discretion when it used the definition of "sadistically" we mentioned in Howard, 21 F.3d at 872, to help explain the culpable mind-set required by Hudson, 503 U.S. at 9. Another definitional approach was approved by the Third Circuit in Douglas v. Owens, 50 F.3d 1226, 1232-33 n.13 (3d Cir. 1995).  In Owens, the district court instructed the jury that "[t]o do something sadistically means to inflict pain on the person for one's own pleasure."  We believe this definition also properly focuses the jury's analysis on the correctional officers' subjective motivations, guiding the jury to determine the intent with which force was used.  We think the "delighting in cruelty" definition from Howard and the "to inflict pain on the person for one's own pleasure" language from Owens essentially say the same thing.  The verdict directing instructions used in this case properly allowed the jury to determine separately whether the force used was excessive.  See Manual of Model Civil Jury Instructions For The District Courts Of The Eighth Circuit, § 4.30 (1995).

Parkus also asserts the district court improperly gave the jury an instruction based on substantive due process principles.  In the district court, Parkus objected to the instruction because it "add[ed] an extra element" to his excessive force claims.  On appeal, however, Parkus contends the instruction bolstered "the improperly high standard" for the culpable state of mind that Parkus reads into the district court's definition of the sadistic factor.  Parkus may not state one ground when objecting to the instruction in the district court and then rely on a different ground on appeal.  See Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 643 (8th Cir. 1995).  Thus, Parkus's assertion is not entitled to our consideration.  Although Parkus

has waived his right to object on the ground he raises on appeal, we have reviewed Parkus's claim under the plain error standard.  See id.  Having done so, we do not find plain error, and even if we did, we would not hold the instruction produced a miscarriage of justice.  See United States v. Olano, 507 U.S. 725, 732-37 (1992).

Next, Parkus contends the district court improperly ruled that Parkus could not assert an alternate claim for violation of procedural due process independently of the Eighth Amendment.  We disagree.  Like the Seventh Circuit, we hold that "due process does not require that a hearing be held before applying necessary and justifiable force in a prison disturbance situation," Lunsford v. Bennett, 17 F.3d 1574, 1583 (7th Cir. 1994).  The record does not support Parkus's argument that he was entitled to post-deprivation protections in the aftermath of his violent attack on the prison psychologist.  The psychologist fought Parkus tooth and nail until the correctional officers arrived, and Parkus vigorously opposed their efforts to subdue him until he was secured in the prison infirmary.  Having been dosed several times with mace, Parkus was slippery as a greased pig and although he was handcuffed, he struggled, twisted, kicked, and jerked "like a dolphin" when the officers carried him to the infirmary.  Without doubt, Parkus was punched, dropped, and pushed into walls and door frames, leaving the jury to decide whether the Eighth Amendment was violated.  Nevertheless, we find no room for procedural due process protections in the volatile circumstances of this case.  The district court correctly granted judgment as a matter of law on Parkus's procedural due process claims.

Next, Parkus argues the district court improperly refused to apply the doctrine of collateral estoppel to the findings of a state administrative board that reviews the employment decisions of Missouri's Department of Corrections.  After a hearing, this board made findings about the force correctional officer Billy R. Davis used on Parkus and decided Davis was properly dismissed.  The district court rejected Parkus's argument that Davis was collaterally estopped from giving contradictory testimony at the federal trial.

Parkus correctly states that Missouri courts give preclusive effect to administrative findings if the criteria for applying collateral estoppel are satisfied. See Bresnahan v. May Dept. Stores Co., 726 S.W.2d 327, 329-30 (Mo. 1987) (explaining four-pronged test). If they are, this court likewise gives the administrative fact finding the same preclusive effect in later litigation. See Fife v. Bosley, 100 F.3d 87, 89 (8th Cir. 1996) (citing University of Tenn. v. Elliott, 478 U.S. 788, 799 (1986)).

Parkus's preclusion argument flounders, however, because the issues in this case were not unambiguously decided in the earlier administrative proceeding. See Davis v. Stewart Title Guar. Co., 695 S.W.2d 164, 165 (Mo. Ct. App. 1985). The issue before the state administrative body arose from Davis's firing for violating departmental rules prohibiting the unauthorized use of force (more than reasonably necessary to maintain control) against an inmate and requiring a report if this kind of force was used by other correctional officers. Unlike the administrative hearing, however, the core Eighth Amendment issue before the jury was whether Davis applied force maliciously and sadistically for the very purpose of causing harm. See Howard, 21 F.3d at 872; Cummings v. Malone, 995 F.2d 817, 822 (8th Cir. 1993). Because the administrative board analyzed Davis's use of force under significantly different criteria, see Fife, 100 F.3d at 89-90, and we cannot say identical issues were unambiguously decided by the administrative body, see Davis, 695 S.W.2d at 165, we conclude the district court correctly ruled that Parkus could not assert collateral estoppel in this case.

Finally, Parkus's remaining claims require little discussion. We find no abuse of discretion in the district court's evidentiary rulings. Likewise, the district court did not abuse its discretion when the court denied Parkus's motion for new trial based on Parkus's claim that the jury verdict was against the weight of the evidence. See Keenan v. Computer Assoc. Int'l, Inc., 13 F.3d 1266, 1269 (8th Cir. 1994).

We affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.